Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| ASHLEY-ANN JIMÉNEZ PÉREZ<br><br>Parte Recurrente<br><br>v.<br><br>WILBERT JIMÉNEZ MENDEZ, JASWIL ALEIS JIMÉNEZ PÉREZ, WILBERT JAVIER JIMÉNEZ PÉREZ<br><br>Parte Recurrida | TA2026AP00417 | *APELACIÓN **se acoge como Certiorari** procedente* del Tribunal de Primera Instancia, Sala Superior de Aguada<br><br>Caso Núm.: AU2025CV00265<br><br>Sobre: DIVISIÓN O LIQUIDACIÓN DE LA COMUNIDAD DE BIENES HEREDITARIOS, INJUNCTION (ENTREDICHO PROVISIONAL, INJUNCTION PRELIMINAR Y PERMANENTE) |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

# **SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2026

Comparece Ashley-Ann Jiménez Pérez ("Sra. Jiménez" o "Recurrente") y solicita que revisemos la Resolución Interlocutoria emitida el 20 de marzo de 2026[1] y el 7 de abril de 2026, por el Tribunal de Primera Instancia, Sala Superior de Aguada ("foro de instancia" o "foro recurrido"). Mediante la primera Resolución, el foro de instancia declaró *No Ha lugar* la Moción en Solicitud de Orden y Designación de Defensor Judicial. Posteriormente, luego de la presentación de una moción de reconsideración y su correspondiente oposición, el foro recurrido emitió una Resolución Interlocutoria declarando *No Ha Lugar* la solicitud de reconsideración.

---

[1] Notificada el 25 de marzo de 2026.

Por los fundamentos que exponemos a continuación, se acoge como *certiorari*, se **expide** el recurso y se **modifica** la determinación recurrida a los fines de atemperar las proporciones por las cuales los comuneros pagarán el costo de la tasación.

-I-

A continuación, detallamos los hechos pertinentes a la controversia de epígrafe.

El 7 de mayo de 2025, la Sra. Jiménez presentó una *Demanda*[2] sobre División y Partición de Herencia e Interdicto Provisional. El 17 de junio de 2025, Wilbert Jiménez Méndez, Jashwil Jiménez Méndez y Wilbert Jiménez Pérez ("Recurridos") presentaron su *Contestación a Demanda*[3]. Luego de iniciado el descubrimiento de prueba, el 23 de enero de 2026, la Recurrente presentó una *Moción en Solicitud de Orden y Designación de Defensor Judicial*[4]. Según alega la Recurrente en dicha moción, el 22 de enero de 2026, le cursó una oferta de transacción a los Recurridos a fin de adquirir la participación hereditaria de sus hermanos en cuanto a la totalidad del caudal de la causante. Además, le solicitó al foro de instancia que le nombrara un Defensor Judicial a Jashwil Jiménez Pérez, quien es menor de edad y, según alega, no tiene capacidad para administrar sus bienes ni para sustentarse de forma independiente. También alegó que su padre, el señor Wilbert Jiménez Méndez no puede continuar representando al menor por tener conflictos potenciales con este. Así las cosas, la Sra. Jiménez sostuvo que el representante legal de los Recurridos estaba impedido de

---

[2] Véase Entrada #1 del expediente de Primera Instancia en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] Véase Entrada #4 del expediente de Primera Instancia en SUMAC.
[4] Véase Entrada #28 del expediente de Primera Instancia en SUMAC.

continuar con la representación simultánea de los tres, toda vez que estos tienen intereses encontrados.

El 4 de febrero de 2026, el foro de instancia celebró una Vista Transaccional[5]. Posteriormente, el 16 de febrero de 2026, los Recurridos presentaron una *Réplica a Moción en Solicitud de Orden y Designación de Defensor Judicial*[6]. Entre sus planteamientos, los Recurridos afirman que no existe un conflicto de intereses que afecte la representación conjunta del licenciado Leonardo Muñiz Gómez. Además, señalan que la intervención de un defensor judicial es innecesaria, pues esta sólo procede cuando el cliente está en riesgo de sufrir daño físico sustancial, daño financiero u otro daño y no puede actuar en su propio interés. Así las cosas, el 20 de marzo de 2026, el foro de instancia emitió una *Resolución Interlocutoria*[7] en la que declaró *No Ha Lugar* la moción en solicitud de orden y designación de defensor judicial. El mismo día, el foro recurrido emitió una *Orden*[8] mediante la cual designó a Marilyn Quintana ("Sra. Quintana") como tasadora y determinó que sería pagada en partes iguales. Inconforme, el 31 de marzo de 2026, la Recurrente presentó una *Moción de Reconsideración*[9]. En esa ocasión, solicitó que se seleccionara la propuesta de trabajo menos onerosa, toda vez que la cotización de la Sra. Quintana fue la más elevada. Por su parte, solicitó que los honorarios de la tasadora se pagaran de acuerdo al porciento de participación de cada comunero y no en partes iguales, como determinó el foro de instancia. El 2 de abril de

---

[5] Véase Entrada #34 del expediente de Primera Instancia en SUMAC.
[6] Véase Entrada #37 del expediente de Primera Instancia en SUMAC.
[7] Véase Entrada #39 del expediente de Primera Instancia en SUMAC.
[8] Véase Entrada #40 del expediente de Primera Instancia en SUMAC.
[9] Véase Entrada #41 del expediente de Primera Instancia.

2026, los Recurridos presentaron una *Moción en Oposición a Reconsideración*[10]. El 6 de abril de 2026, el foro de instancia emitió una *Resolución Interlocutoria*[11] en la que declaró *No Ha Lugar* la solicitud de reconsideración. Nuevamente inconforme, el 24 de abril de 2026, la Recurrente acudió ante este Tribunal mediante recurso de apelación, que fue acogido como *certiorari*, e hizo los siguientes señalamientos de error:

> **PRIMER ERROR: ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA MOCIÓN EN SOLICITUD DE ORDEN Y DESIGNACIÓN DE DEFENSOR JUDICIAL, A PESAR DE EXISTIR UN CLARO CONFLICTO DE INTERESES ENTRE PADRE Y EL HIJO COMO COMUNEROS EN LA MISMA COMUNIDAD HEREDITARIA.**

> **SEGUNDO ERROR: ERRÓ EL TPI AL ORDENAR EL PAGO DE LOS GASTOS DE TASACIÓN EN PARTES IGUALES EN VEZ DE QUE DICHO PAGO SE REALICE EN LA PROPORCIÓN DE PARTICIPACIÓN DE CADA COMUNERO EN LA COMUNIDAD DE BIENES.**

El 4 de mayo de 2026, los Recurridos presentaron su oposición a la expedición del auto de *certiorari*. En síntesis, alegaron que la Recurrente no ha demostrado que entre su padre y su hermano menor de edad haya un conflicto real que atente contra sus intereses como heredero. Respecto al segundo señalamiento de error, los Recurridos afirman que aún quedan por considerar muchos asuntos en beneficio de la comunidad hereditaria. Además, señalan que el pago en partes iguales se puede sostener por ser un adelanto necesario, especialmente cuando ambas partes necesitan la prueba pericial para adjudicar el valor de los bienes en controversia. Posteriormente, el 22 de mayo de 2026, la Recurrente presentó una *Réplica a Memorando en Oposición a Expedición de Certiorari*. Mediante dicho escrito, la Sra. Jiménez reafirmó su

---

[10] Véase Entrada #42 del expediente de Primera Instancia en SUMAC.
[11] Véase Entrada #43 del expediente de Primera Instancia en SUMAC.

postura sobre la necesidad de un defensor judicial que represente los intereses de su hermano menor de edad.

-II-

## A. *Certiorari*

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[12]

Mediante la Regla 52.1 de Procedimiento Civil de 2009[13], se hizo un cambio trascendental respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tales efectos, la Regla 52.1 de Procedimiento Civil, *supra*, dispone, en parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto

---

[12] *Pueblo v. Díaz De León*, 176 DPR 913, 917 (2009).
[13] 32 LPRA Ap. V, R. 52.1.

en la Regla 50 sobre los errores no perjudiciales.

Por tanto, el asunto planteado en el recurso instado por el promovente debe tener cabida bajo alguno de los incisos de la Regla 52.1, *supra*, pues el mandato de la referida regla establece taxativamente que "*solamente será expedido*" el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, aquellos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.[14]

Así las cosas, el primer examen que debe pasar todo recurso de *certiorari* para ser expedido es que tenga cabida bajo alguno de los incisos de la Regla 52.1 de Procedimiento Civil.

Superada esta primera etapa, procede hacer nuestro examen tradicional caracterizado por la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. A pesar de ser un asunto discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones esboza los siete criterios que el tribunal tomará en consideración al determinar la expedición de un auto de *certiorari*. Estos son:

---

[14] La Ley Núm. 177 del 30 de noviembre de 2010 "extendió la facultad de presentar recursos de *certiorari* para revisar también aquellas órdenes o resoluciones interlocutorias dictadas por el foro primario que involucren asuntos de interés público o que presenten situaciones que demanden la atención inmediata del foro revisor, pues aguardar hasta la conclusión del caso conllevaría un 'fracaso irremediable de la justicia'" *IG Builders, et al. v. BBVAPR*, 185 DPR 307 (2012).

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[15]

Por tanto, la discreción judicial "*no se da en un vacío ni en ausencia de unos parámetros*", sino que el tribunal revisor debe ceñirse a los criterios antes transcritos.[16]

Si luego de evaluar los referidos criterios, el tribunal no expide el recurso, queda a su discreción fundamentar su determinación, debido a que no tiene la obligación de hacerlo.[17] Esto es cónsono con el fundamento cardinal para la adopción de la Regla 52.1, *supra*, que es "*atender los inconvenientes asociados con la dilación que el antiguo esquema ocasionaba en los*

---

[15] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR ___ (2025).
[16] *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011).
[17] Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

*procedimientos, así como la incertidumbre que se suscitaba entre las partes del litigio*".[18]

## B. Defensor judicial

En reiteradas ocasiones, el Tribunal Supremo de Puerto Rico "*ha establecido, como política pública del Estado, la promoción del bienestar y el mejor interés de los menores*"[19]. Conforme a ello nuestro ordenamiento legal establece como responsabilidad y obligación de los padres que ostentan la patria potestad de sus hijos menores no emancipados el representarlos en cualquier acción que pueda redundar en provecho de los menores[20].

Ahora bien, existen situaciones excepcionales en las que los progenitores tienen un interés contrario a los del menor[21]. En cuyo caso el Tribunal Supremo ha reconocido que procede el nombramiento de un defensor judicial. Lo anterior, en virtud del poder de *parens patriae* que ostenta el Estado y que tiene como único y principal objetivo asegurar el bienestar de los menores e incapaces[22]. El defensor judicial es un tutor nombrado por el tribunal para que represente a un incapacitado o a un menor en un pleito en específico[23]. A tono con el nombramiento del defensor judicial, la Regla 15.2 de Procedimiento Civil[24] reconoce la facultad de los tribunales para nombrar a un defensor judicial que represente a un menor de edad o a una persona incapacitada judicialmente en una causa de acción cuando lo juzgare conveniente o estuviere dispuesto por ley.

---

[18] *IG Builders, et al. v. BBVAPR, supra,* a la pág. 336.
[19] *Rodríguez v. Pérez*, 161 DPR 637, 657-658 (2004).
[20] *Crespo v. Cintrón*, 159 DPR 290, 300 (2003);
[21] *Íd.*
[22] *Íd.*
[23] *Íd.*; *R & G Premier Bank P.R. v. Registradora*, 158 DPR 241, 248 (2002).
[24] 32 LPRA Ap. V, R. 15.2.

## C.  Comunidad de bienes

Como es sabido, en cuanto al régimen económico patrimonial que regirá durante el matrimonio, el Código Civil de Puerto Rico establece que, a falta de capitulaciones matrimoniales válidas, el régimen económico patrimonial supletorio es la sociedad legal de bienes gananciales[25]. Bajo este régimen, los cónyuges figuran como codueños y administradores de todo el patrimonio matrimonial, sin adscribírsele cuotas específicas a cada uno[26].

La sociedad legal de gananciales termina con el divorcio o muerte de uno de los cónyuges, momento en el cual nace una comunidad de bienes post ganancial que regirá hasta la liquidación y división de la antigua sociedad de bienes gananciales[27]. Esta comunidad estará integrada por los bienes que conformaban el activo de la masa común al momento de la disolución de la sociedad legal de gananciales[28].

Nuestro ordenamiento reconoce la existencia de una comunidad cuando la propiedad de una cosa o un derecho pertenece en común proindiviso a varias personas[29]. A su vez, establece una presunción a los efectos de que la participación de los comuneros es por partes iguales tanto en los beneficios como en las cargas mientras no

---

[25] Para propósito de atender la controversia ante nos, haremos referencia a las disposiciones del derogado Código Civil de 1930, por estar vigente al momento de los hechos que generaron el pleito de epígrafe. El Código Civil de 1930 fue revocado y sustituido por la Ley Núm. 55-2020, según enmendada, conocida como el "Código Civil de Puerto Rico". Conforme al Art. 1812 del Código Civil de 2020, 31 LPRA sec. 11717, los actos y contratos celebrados conforme al régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos los efectos según la misma […]. Además, véase *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 177-178 (2018).
[26] *Montalván v. Rodríguez*, 161 DPR 411, 420 (2004).
[27] Art. 1315 del Código Civil, 31 LPRA sec. 3681; *Residentes Sagrado Corazón v. Arsuaga*, 160 DPR 289, 305 (2003); *Soto López v. Colón*, 143 DPR 282, 287 (1997).
[28] *Montalván v. Rodríguez*, *supra*, pág. 429.
[29] Art. 326 del Código Civil, 31 LPRA sec. 1271.

se pruebe lo contrario[30]. Esto quiere decir que "*lo generado durante el término de la comunidad en liquidación es por partes iguales, ya que cada comunero participa en los beneficios y cargas de la comunidad **en proporción a su cuota***"[31]. Al utilizar el concepto "beneficios", el Código Civil se refiere al uso y a los frutos del bien comunitario. Por el contrario, las cargas son obligaciones unidas a la propiedad o derecho de que se trate, son las que se imponen al propietario como tal o al titular del derecho en comunidad[32].

-III-

En el presente caso la Recurrente alega que erró el foro de instancia al no designar un defensor judicial para su hermano menor de edad. Además, sostiene que erró el foro recurrido al ordenar el pago de los gastos de tasación en partes iguales, en lugar de hacerlo de acuerdo al porciento de participación de cada comunero. Veamos.

Según surge de los autos del caso, la Recurrente les cursó a los Recurridos una oferta de transacción a fin de adquirir la participación hereditaria de sus hermanos. Así las cosas, y debido a que el padre del menor es quien lo representa en estas gestiones, la Sra. Jiménez alega que existe un conflicto de intereses entre este y el menor. Lo anterior, debido a que el padre tiene el 50% de participación en la comunidad de bienes, lo que le impide evaluar cualquier oferta que se le realice al menor a quien representa. Por tal razón, solicitó la designación de un defensor judicial. Ante tal solicitud,

---

[30] Art. 327 del Código Civil, 31 LPRA sec. 1272; *Díaz Rodríguez v. García Neris*, 208 DPR 706, 716 (2022).
[31] *Bidot v. Urbino*, 158 DPR 294, 304 (2002). Énfasis suplido.
[32] *Díaz v. Aguayo*, 162 DPR 801, 809 (2004).

y según surge del expediente electrónico, el foro de instancia se limitó a declarar "*No Ha Lugar*" la petición, sin más.

Este Tribunal no se encuentra en posición de intervenir con el ejercicio discrecional del foro primario al denegar la solicitud para designarle un defensor judicial al hermano menor de edad de la recurrente. Ahora bien, le exhortamos al foro de instancia a tener cautela en un futuro ante la designación de un defensor judicial.

Pasemos a evaluar el segundo señalamiento de error. Evaluadas las cotizaciones de los tasadores, el foro recurrido determinó que la tasadora designada sería pagada en partes iguales, es decir 50% por la recurrente y 50% por los recurridos. Sin embargo, no podemos perder de perspectiva el porciento de participación de cada comunero. En el caso ante nos, el viudo tiene un 50% de participación, mientras que sus hijos tienen un 16.67% de participación cada uno. Por lo tanto, a tenor con la legislación aplicable, procede que los comuneros hagan el pago de la tasación en proporción a su cuota. Por tanto, este error se cometió.

-IV-

A la luz de los fundamentos antes esbozados, **expedimos** el auto de *certiorari* y **modificamos** la determinación recurrida a los fines de atemperar las proporciones por las cuales los comuneros pagarán el costo de la tasación.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones